[Civ. No. 3106.   First Appellate District, Division One.—December 23, 1919.]

## MARGARET HORTON MORGAN et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — DERAILMENT OF TRAIN — INJURY TO PASSENGER — PRIMA FACIE PRESUMPTION.—When a passenger is injured by the derailment of a train, the fact of such an accident raises a *prima facie* presumption of negligence, which the railway company has the burden of overcoming by clear and explicit proof that the accident could not have been avoided by the utmost practical care and diligence, and that it proceeded from something against which no human prudence or foresight, on the part of the company, could provide.

[2] ID.—CARE REQUIRED OF CARRIER OF PASSENGERS—BREAKAGE OF RAILS—PURCHASE FROM COMPETENT MANUFACTURER.—A railroad company, as a carrier of passengers, is bound to the utmost care and diligence of very cautious persons, being responsible for even the slightest neglect; and it is not excused from that degree of care and diligence by the fact that the rail in use, the breakage of which caused the derailment of its train and consequent injury to a passenger, was constructed by a competent and skilled manufacturer from whom it purchased it. The manufacturer was its agent or servant in the rolling of the rail, and it is responsible for any want of care of the maker.

[3] ID.—LATENT DEFECTS—ABILITY TO DISCOVER DURING MANUFACTURE—LIABILITY OF CARRIER.—A common carrier is responsible for defects, which, even though not discoverable after the instrumentality came into its possession, could have been discovered by the most careful and thorough examination during the process of manufacture.

[4] ID.—VERDICT FOR PLAINTIFF—FINDING OF NEGLIGENCE IMPLIED.—In an action for damages for personal injuries received through derailment of a car while riding as a passenger therein, the verdict of the jury in favor of the plaintiff implies a finding of negligence on the part of the defendant.

1.   Derailment of train or car as evidence of negligence on part of carrier, notes, 12 Ann. Cas. 1045; Ann. Cas. 1913E, 552.

2.   Liability of carrier for injuries resulting from derailment of train caused by buckling of rails, note, Ann. Cas. 1913D, 211.

[5] Id.—Verdict — Proportionate Compensation — Refusal to Set
Aside.—Where the verdict in an action for damages for personal
injuries is not grossly disproportionate to any reasonable limit of
compensation warranted by the facts in the case, and there is
nothing to indicate that the verdict was the result of passion or
prejudice on the part of the jury, the trial court is correct in re-
fusing to set it aside.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Charles Monroe, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage and W. I. Gilbert for Appellant.

Nathan Newby for Respondents.

WASTE, P. J.—Plaintiffs, wife and husband, brought this
action for the recovery of damages, for injuries received
by the wife, through derailment of a car being operated by
defendant on its main line in Arizona, while she was a
passenger thereon.   All the allegations of plaintiffs with re-
lation to the negligence of the defendant and the injuries
to Mrs. Morgan were denied by the defendant.   For a fur-
ther answer and defense, it alleged that the derailment of
the train was caused by a break in the track, through no
carelessness or negligence of itself, or any of its servants, but
resulted from latent defects in the rail not discoverable by ·
usual and ordinary inspection and examination.   Defend-
ant asked for a directed verdict, which was refused.   The
jury found in favor of the plaintiffs for three thousand
one hundred dollars.   A motion for a new trial, made by
defendant, was denied, and this appeal is from the judg-
ment entered on the verdict in plaintiffs' favor.

The train on which the injured plaintiff was riding was
running westerly from Yuma to Los Angeles.   At the time
of the accident it was late, and, according to one witness,
"running very fast."   The derailment took place on a
"two-degree," or, what is commonly called in railroad par-
lance, a very easy, curve.   The engine and some of the
cars remained on the track, while the diner, two Pullmans,
and the observation-car were derailed and turned over on
the outer side of the curve.   Having shown these facts and
established a *prima facie* case by showing that the injury

to Mrs. Morgan occurred while she was being carried as a passenger by defendant, through the use by it of an instrumentality under its control, plaintiffs rested their case.

Defendant thereupon introduced evidence showing that an inspection of the scene of the accident by the division engineer of the defendant and others disclosed a broken rail at that point, which, in the opinion of these witnesses, caused the derailment of the train. The division engineer testified that the rail broke because of an initial weakness, or latent defect, in its manufacture, caused by permitting slag to be rolled into the steel, producing what is technically called a ''piped rail,'' or one having a concealed hole or hollow space in its interior. A break of that kind, the same witness testified, is not discoverable by the usual and ordinary means of track inspection and examination conducted by the defendant, for the reason that the defect is entirely within the metal, with no visible indication on the surface to show it and nothing by which the impending failure of the rail may be foreseen before an accident occurs. Such defects usually develop in the ball, or top portion, of the rail, which falls, or sags, at that point. This sagging causes no sound as the wheels pass over it and can only be detected by sight and observation. The crest of the rail not being touched and correspondingly worn with the rest of the bearing surface by the passage of car-wheels develops an eliptical discoloration, which, to the trained observer, gives notice of the presence of the defect.

In support of its contention that the ordinary means of examination and inspection of the roadbed were used, defendant showed that Casey, the section foreman, made an inspection of the track where the accident occurred, on Thursday, two days before the wreck. He made his inspection while riding on the front of a motor-car and seated about four and one-half feet above the rail. Kelleher, foreman of an adjoining section, testified that the broken rail caused the derailment because of the curve. He passed over the track ten or twelve hours before the accident on a velocipede-car, and later walked back over that part where the wreck occurred, pushing his velocipede before him, and looking for and repairing some broken bond wires of the signal system. He testified that he examined the track and did not see anything wrong with it. About six months before the acci-

dent he had replaced the ties on that section of the road, re-lined and gaged the track, and had not discovered any defect in the rail at that time. Brown, roadmaster of the defendant, passed over the track about three days before the wreck occurred, giving it the "usual method of track inspection," which, he testified, was to go over the line on a motor-car, seated about a foot and a half above the rails. Mathews, division engineer of the company, also testified that he inspected the track about ten days before the wreck, making the examination, he thought, from the rear end of a train which was going in the neighborhood of thirty miles an hour. The discoloration of the rail caused by the sag-ging, so he testified, could be observed in thus passing over the track.

The fractured rail was a Carnegie rail, weighing seventy-five pounds per yard, purchased in 1899 from the Edgar Thompson mills, which was stipulated to be a reputable house engaged in the manufacture of steel rails. At the time of the accident it had been laid and in use for seven-teen years on the main line of defendant as the outside rail on a two per cent curve. Parts of the broken rail were brought into court and exhibited to the jurors.

On cross-examination of defendant's witnesses, plaintiff de-veloped the fact that the tendency in railroad practice, in recent years, had been to increase the size of rails used in main line construction to as high as 120 pounds to the yard; that having gone to a point where the best results were not obtained, during the last fifteen years it has been considered the best practice to have ninety-pound rails; that the gross weight of the engines in use by defendant has increased, but the wheel loads have not materially grown. The division engineer of defendant also testified that "several broken rails a month" occurred on his division, and that "piped rails" were a very frequent occurrence; that as soon as detected they were taken up and replaced.

[1] When a passenger is injured by the derailment of a train, the fact of such an accident raises a *prima facie* pre-sumption of negligence, which the railway company has the burden of overcoming by clear and explicit proof that the accident could not have been avoided by the utmost practi-cal care and diligence, and that it proceeded from something against which no human prudence or foresight, on the part

of the company, could provide. (3 Thompson on Negligence, 2d ed., pars. 2909, 2910; *Fairchild* v. *California Stage Co.*, 13 Cal. 599, 604; *McCurrie* v. *Southern Pacific Co.*, 122 Cal. 558, 561, [55 Pac. 324].) That such is the law is admitted by the appellant. Upon the state of the evidence, however, it claims exoneration in the instant case. It relies first upon the stipulated fact that it purchased the rail forming part of its track from a manufacturer of reputation, and, second, that after employing all reasonable care and skill for the purpose of detecting any weakness in the rail, the defect which was the cause of the accident, remained undisclosed, and, in fact, could not be discovered by means of the examination which the defendant made.

[2] The precise question we are here confronted with was elaborately considered by the supreme court of this state, in *Treadwell* v. *Whittier*, 80 Cal. 574, [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266]. So completely is the matter there discussed, and so thoroughly are the authorities examined and quoted from, that the decision may be said to be the leading case in California upon the subject. It was there said (page 588) : ''The doctrine of the American courts is still more strict and explicit, and the general current of the authorities is, that the carrier of passengers is bound to the utmost care and diligence of very cautious persons, and is responsible for any, even the smallest, neglect; holding their undertaking to be to carry their passengers with safety as far as human care and foresight can go.'' It is settled by that decision, and seems to be well-established by the cases therein examined and cited, that appellant was not excused from the degree of care and diligence pointed out, by the fact that the rail in use was constructed by a competent and skilled manufacturer from whom it purchased it. The manufacturer was its agent or servant in the rolling of the rail, and it is responsible for any want of care of the maker. The obligations of care and foresight rested upon the defendant using the rail, and it cannot shift it from itself to another person. Whether the rail was manufactured in the workshop of defendant, by agents employed for the purpose or by a manufacturer engaged in the business of supplying such articles for sale, defendant was bound to see that in its making no care or skill was omitted. ''When such care and skill has been exercised the defend-

ant's duty in this respect has been discharged. If, on the other hand, a defect existed in the construction, which might have been detected and remedied, it was answerable for the consequences." (*Hegeman v. Western R. R. Corp.*, 16 Barb. (N. Y.) 353, 356, cited approvingly in *Treadwell* v. *Whittier, supra,* 80 Cal. 597, [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266].)

[3] Following the Treadwell case, the supreme court has steadfastly adhered to the doctrine there laid down, that in this state a common carrier is responsible for defects, which even though not discoverable after the instrumentality came into its possession, could have been discovered by the most careful and thorough examination during the process of manufacture. (*Siemsen* v. *Oakland S. L. & H. Ry.*, 134 Cal. 494, 499, [66 Pac. 672]; *Jacobi* v. *Builders' Realty Co.*, 174 Cal. 708, 710, [L. R. A. 1917E, 696, 164 Pac. 394]; *Treadwell* v. *Whittier, supra,* 80 Cal. 594 et seq.) In view of the above rule, so strongly drawn in this state, we feel that the lower court could not say, as matter of law, that the defendant had successfully met the burden imposed upon it by plaintiffs' *prima facie* case. Defendant's only witness as to the latent defect and its cause never had any practical experience in the manufacture of or science of making rails. So far as the record discloses he was never in any way connected with such work. There was no evidence as to the processes or care employed in the rolling-mills to eliminate slag from rails, or as to tests, or of examination in their manufacture. The effect of the evidence, as we view it, is that, after the rail was made and purchased by defendant, such defects in its inner fabric are not discoverable, cannot be, and, as matter of fact, in the instant case, were not, disclosed by "the usual and ordinary" methods of inspection pursued by defendant.

As before stated, the broken portions of the rail were submitted to jurors. They may not have been satisfied with the theory of the expert, as against the result of their own inspection and examination. As was pointed out in *Seimsen* v. *Oakland S. L. & H. Ry., supra,* and its companion case, *Johnsen* v. *Oakland etc. Ry.*, 127 Cal. 608, [60 Pac. 170] the jury may have considered other circumstances attending the accident, which, in their judgment, entered into a consideration of the case. The fact that the

train was late and running very fast; the happening of the accident at a curve; the great length of time the broken rail had been in use; its weight; its texture and physical qualities appearing from the inspection; the credibility of the witnesses, and the probability of the correctness of the theories advanced by defendant as to the cause of the accident, were all proper matters for the consideration of the jury in arriving at a verdict. Under the doctrine of *res ipsa loquitur* proof that the injury to Mrs. Morgan was caused by the derailment of the train, which was under the control and management of defendant, warranted the inference of negligence on the part of defendant without further showing on the part of the plaintiffs. (Shearman & Redfield on Negligence, 6th ed., sec. 516.) The burden then devolved upon the defendant to show that it was not guilty of negligence for which it could be charged. (*Treadwell v. Whittier, supra,* 80 Cal. 582.) In the case of *Sweeney* v. *Erving,* 228 U. S. 233, 240, [Ann. Cas. 1914D, 905, 57 L. Ed. 815, 33 Sup. Ct. Rep. 416, see, also, Rose's U. S. Notes], the United States supreme court said:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

[4] The verdict of the jury in the instant case implies a finding against defendant. (*Worden* v. *Central Fireproof Building Co.,* 172 Cal. 94, 96, [155 Pac. 839].)

[5] Appellant assails the verdict upon the ground that it is excessive. There is ample evidence, if believed, to support the claim of plaintiffs, as to the nature and extent of Mrs. Morgan's injuries. There is nothing in the record to indicate that the verdict was the result of passion or prejudice on the part of the jury. It is not grossly dispro-

portionate to any reasonable limit of compensation warranted by the facts in the case, and the trial court was correct in refusing to set it aside. (*Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, 254, [116 Pac. 513]; *Bond* v. *United Railroads,* 159 Cal. 270, 286, [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, 164, [47 Pac. 1019].)

The rulings of the lower court here assailed were correct. The motion for a new trial was properly denied.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1920.

All the Justices concurred.