[L. A. No. 7258. In Bank.—June 28, 1923.]

SANFORD C. SCARBOROUGH, Respondent, v. M. URGO, Defendant; MOTOR TRANSIT COMPANY (a Corporation), Appellant.

[1] CARRIERS—CONVEYANCE OF PASSENGERS—DEGREE OF CARE REQUIRED. Carriers of passengers for reward bind themselves to carry safely those whom they undertake to convey or carry as far as human care and foresight will go; that is, with the utmost care and diligence of very cautious persons, and they are responsible for any, even the slightest, negligence.

[2] NEGLIGENCE—ACTION BY PASSENGER—PERSONAL INJURIES—PRIMA FACIE CASE—EVIDENCE.—In an action by a passenger against the carrier for damages for personal injuries, a *prima facie* case of negligence is made out by proving that the passenger was injured while being carried as such, and this being done, the carrier is called upon to rebut or overcome a presumption of negligence that follows from the mere fact of injury, by showing, if it can, the exercise of the utmost care and diligence of very cautious persons.

[3] ID.—PRESUMPTION—BURDEN OF PROOF.—The presumption of negligence which follows from the fact of injury to the passenger is evidence in the case, but it has no greater or different effect than the testimony of witnesses, and in no degree changes the rule as to the burden of proof, viz., the burden of producing a preponderance of evidence, which burden does not shift from side

---

1. Liability for injury to passenger by negligent operation of car, notes, 21 L. R. A. (N. S.) 81; 35 L. R. A. (N. S.) 658.

to side on the trial of the case, but constantly remains with the party having the affirmative of the issue; all that is required of the defendant is to produce evidence sufficient to offset the effect of plaintiff's showing and it is not required to offset it by a preponderance of the evidence.

[4] ID.—BURDEN OF PROOF CONSTANT WITH PASSENGER.—In an action by a passenger against the carrier for damages for personal injuries, the burden is upon the plaintiff to prove the negligence complained of by a preponderance of the evidence, and this burden still remains upon him, even though he has shown that he was injured by a collision between two vehicles while being carried as a passenger in one of them.

[5] ID.—REFUSAL TO GIVE REQUESTED INSTRUCTION—BURDEN OF PROOF —RES IPSA LOQUITUR.—In such an action, the refusal to give a requested instruction to the effect that it was incumbent upon the plaintiff to prove by a preponderance of the evidence that the accident was caused by some act of omission or neglect of the carrier, and that if the evidence was equally balanced in the minds of the jurors as to the act or neglect of the carrier, then they should find a verdict for the carrier, for otherwise they would not be finding in accordance with the preponderance of the evidence, cannot be justified on the ground that such instruction ignored the doctrine of *res ipsa loquitur,* where the jurors were elsewhere in the charge of the court fully informed regarding such doctrine.

[6] ID.—INSTRUCTIONS—RULES.—A party cannot be justly required in requesting an instruction to embody therein all the rules of law applicable to the case, nor even all the rules applicable to the issue of fact, or to the principle of law involved in the instruction.

[7] ID. — RES IPSA LOQUITUR — BURDEN OF PROOF — INSTRUCTIONS.— Where the court gives an instruction embodying the doctrine of *res ipsa loquitur,* it should also give one to the effect that the burden of proving his case by a preponderance of the evidence rests upon the plaintiff.

[8] ID.—BURDEN OF PROOF—DENIAL OF INSTRUCTION—MISCARRIAGE OF JUSTICE.—In this action for damages for personal injuries suffered by a passenger on a motor-bus when the same collided with an autotruck, the defendant carrier was deprived of a substantial right which in effect amounted to a miscarriage of justice by the denial of the right under the circumstances of the case to have the jury instructed that it was incumbent upon plaintiff to prove his case by a preponderance of the evidence against it as well as against its codefendant.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

Dot, Jennings & Belcher, Haas & Dunnigan and H. L. Dunnigan for Appellant.

Miguel Estudillo for Respondent.

SEAWELL, J.—On October 4, 1920, appellant, Motor Transit Company, corporation, a carrier of passengers for reward, was operating a motor-bus line upon the public highway connecting the city of Riverside and the city of Los Angeles. Respondent, Sanford C. Scarborough, having paid his fare, took passage on one of appellant's busses at Riverside westerly bound for Los Angeles. M. Urgo, defendant, was, on said day, operating, as owner, a motor-truck traveling on said highway in an easterly direction. On a section of said highway known as Valley Boulevard, at a point near Walnut, while rounding a curve in the highway, said bus and motor-truck collided, inflicting upon respondent injuries of rather a serious nature.

Uncertain as to which was at fault, respondent made both owners of the motor vehicles defendants in an action in the court below, alleging joint negligence. Each answered separately. By the verdict the jury exculpated defendant, Urgo, and found against appellant.

This appeal is taken by appellant, Motor Transit Company, because of the court's refusal to give the following instruction, or its equivalent, in any part of its charge to the jury:

". . . It is incumbent upon the plaintiff to prove by a preponderance of the evidence that such accident was caused by some act of omission or neglect on the part of the Motor Transit Company, and if the evidence is equally balanced in your minds as to the act or neglect of the defendant, Motor Transit Company, then you must find a verdict for the defendant, for otherwise you would not be finding in accordance with the preponderance of the evidence."

It is a fact that the jury was not at any time, so far as appellant's liability was concerned, instructed that the burden of proof was upon the plaintiff, or that plaintiff was required to prove his case by a preponderance of the evidence, or if the evidence in the minds of the jurors appeared

to be "evenly balanced" the verdict must be for appellant. As to defendant, Urgo, the jury was fully and repeatedly instructed on at least one of the elementary principles of law, to wit, burden of proof, upon which the code requires that "they are to be instructed *by the court on all proper occasions.*" (Code Civ. Proc., sec. 2061.) (Italics ours.) Certainly it is demonstrated by the record that this case furnished the proper occasion for the giving of the requested instruction. Seven groups of rules of evidence are specifically enumerated in section 2061 of the Code of Civil Procedure, the fifth of which is:

"5. That in civil cases the affirmative of the issue must be proved, and when the evidence is *contradictory* the decision must be made according to the *preponderance of evidence;* that in criminal cases guilt must be established beyond a reasonable doubt." (Italics ours.)

Respondent does not claim that the portion of the instruction above quoted was an improper instruction to have been given to the jury, but claims that its omission does not constitute grounds for reversal on the theory that a miscarriage of justice could not have resulted therefrom. (Const., art. VI, sec. 4½.)

We have made a careful examination of all the evidence in the case and also of the entire record and we are fully convinced that this claim cannot be sustained.

We would refuse to reverse the case merely because of the refusal or omission of the trial court to instruct the jury as to its duty in case of an "equal balancing" of the evidence provided an examination of the entire cause, including the evidence, satisfied us that the evidence so greatly preponderated in favor of the judgment that had the refused instruction been given the verdict would have been and should have been the same.

The paved portion of the highway upon which the collision took place is of a width of twenty-one feet. The motor-truck, which is known as a dual-tire truck, was following closely behind another truck of the same general type which was drawing a trailer. Both motor-trucks were well loaded with empty fruit boxes extending ten or twelve feet above the floors or beds of said trucks. The driver of appellant's bus testified that when he first observed defendant's motor-truck it was four hundred feet distant from him and

beyond the curve. Defendant Urgo admitted that he did not see the bus until within twenty or thirty feet of it, while several passengers, including plaintiff, stated that they did not see the motor-truck until it was practically in collision with the bus. Urgo further stated that he was following about fifteen feet behind the first truck, but when it turned to the center of the road to avoid a space in the highway which he described as being near its center and estimated to be forty to fifty feet long by three to four feet wide, and which had recently been repaired with a material different in color from the pavement, but which was practically level with the macadam surface, and over which vehicles passed, he turned to the left and the collision occurred. He had not recently traveled this particular road. He admits that he did not observe the repaired space until he was very near it. His movements were guided by the actions of the driver of the truck he was trailing rather than by the exercise of his own senses of observation. While he charged at the outset of his examination that the driver of the bus had turned from his proper position on the road to avoid a rough spot in the highway, he destroyed the force of this testimony during the final moments he occupied the witness-stand. We quote from his testimony: "The Court: How near was the motor-bus to the center of the road at the time of the collision? A. Well, his front end was over towards the road, the center of the road, more than his rear end. The Court: I know, but where was the front end, then, with reference to the center of the road? A. I wouldn't say for sure. It was over the center of the road and I wouldn't say for sure it wasn't. Q. Where was yours? Was yours over the center of the road? A. No, sir. Q. What? A. No, sir. Q. Are you sure of that? A. I am sure of it. Q. But you are not sure whether it was or not? A. No. I wouldn't say for sure. Q. How did you get together? A. I don't know. We just hit together, that is all. . . . Mr. Estudillo: The bus didn't hit you, did it? A. Well, I don't know whether it hit me or whether I hit him." The above and other portions of his testimony not given here practically amount to an admission that he was at fault. The driver of the bus testified that he was at all times on the side of the road assigned him by law and that Urgo suddenly swerved from the side of the road he should

have held, crossed the center line and struck the bus immediately back of the driver's seat with resultant injury. He claimed that both right wheels of the bus were off the pavement and on the dirt portion of the roadway to his right as far as the physical conditions of the road would permit. His testimony to the effect that he was well on the side of the road he should have traveled is corroborated by three or four persons who were passengers on the bus and this testimony is not disputed by a single witness except defendant, Urgo, who finally admitted that he did not know how the collision occurred. Respondent, Scarborough, did not seem to be very clear as to the exact position of the truck at the moment of collision, but placed it near the center of the road, or, as he stated later, the left wheels were near the center of the road at the moment of impact. The rate of speed at which the bus was traveling was estimated by respondent at thirty-five miles an hour, and by the other witnesses from thirty-two to a rate less than thirty miles an hour. The motor-truck was traveling at a rate of speed of about fifteen miles per hour. It is not claimed, however, that the rate of speed traveled by either vehicle was a contributing factor to the collision.

[1] The rule is that carriers of passengers for reward bind themselves to carry safely those whom they undertake to convey or carry as far as human care and foresight will go; that is, with the utmost care and diligence of very cautious persons, and, of course, they are responsible for any, even the slightest, negligence. (*Kline* v. *Santa Barbara Ry. Co.*, 150 Cal. 741 [90 Pac. 125].) [2] In this class of cases a *prima facie* case of negligence is made out by proving that the passenger was injured while being carried as such, and this being done, the carrier is called upon to rebut or overcome a presumption of negligence that follows from the mere fact of injury, by showing, if it can, the exercise of that degree of care which will excuse it under the rule of law above stated. [3] Such a presumption is evidence in the case, but it has no greater or different effect than the testimony of witnesses, and in no degree changes the rule as to the burden of proof, viz., the burden of producing a preponderance of evidence. That burden does not shift from side to side on the trial of a case, but constantly remains with the party having the affirmative of the issue,

who, in this case, is the plaintiff. All that is required of the defendant is to produce evidence sufficient to offset the effect of a plaintiff's showing. He is not required to offset it by a preponderance of the evidence. (*Valente* v. *Sierra Ry. Co.*, 151 Cal. 534 [91 Pac. 481].) As is said in *Sweeney* v. *Erving*, 228 U. S. 233 [Ann. Cas. 1914D, 905, 57 L. Ed. 815, 33 Sup. Ct. Rep. 416, see, also, Rose's U. S. Notes], the doctrine of *"res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in the question for the jury is whether the preponderance is with the plaintiff.*"* (See, also, *Kahn* v. *Triest-Rosenberg Cap Co.*, 139 Cal. 341 [73 Pac. 164]; *Cody* v. *Market St. Ry. Co.*, 148 Cal. 90 [82 Pac. 666]; *Patterson* v. *San Francisco etc. Ry. Co.*, 147 Cal. 178 [81 Pac. 531]; *Morgan* v. *Southern Pac. Co.*, 45 Cal. App. 229 [187 Pac. 74]; *Onell* v. *Chappell*, 38 Cal. App. 375 [176 Pac. 370]; *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406 [125 Am. St. Rep. 68, 93 Pac. 106].)

It is expressly conceded by counsel for respondent, and it must, we think, be conceded by us, that the refused instruction correctly states the law in so far as it purports to state it. [4] It properly informs the jury in effect that the burden is upon the plaintiff to prove the negligence complained of by a preponderance of the evidence, and that this burden still remains upon him, even though he has shown that he was injured by a collision between two vehicles while being carried as a passenger in one of them. This is the law. The objections to the refused instruction, upon analysis, resolve themselves into two criticisms: (1) That it ignores the doctrine of *res ipsa loquitur;* (2) That it is misleading. [5] The first objection is not, we think, a valid ground for the refusal of the instruction.

[6] A party cannot be justly required in requesting an instruction to embody therein all the rules of law applicable to the case, nor even all the rules applicable to the issue of fact, or to the principle of law involved in the instruction (38 Cyc. 1598). If the requested instruction is a correct statement of the law of the case, in so far as it purports to cover the same, and there is evidence to which it is properly applicable, it should be given, unless it is covered by other instructions given, or unless it is so

worded as to be likely to mislead the jurors. This precise point was determined in *Stein* v. *United Railroads of San Francisco,* 159 Cal. 368, 372 [113 Pac. 663]. There defendant, appealing from a judgment in favor of plaintiff, complained of the refusal of the trial court to give certain instructions requested by it upon the law of contributory negligence. This refusal was sought to be justified on the ground that the requested instruction ignored the "last clear chance" rule. This court determined that the last clear chance rule was properly applicable to the evidence in that case, but said: "It is no sufficient answer to appellant's objection to the court's refusal to give the requested instructions that they ignored the doctrine of the 'last clear chance.' To announce such a rule would be to hold that each instruction must express all the law on the subject considered. The jurors were elsewhere in the charge of the court fully informed regarding the doctrine of 'last clear chance.' " Substituting the words *"res ipsa loquitur"* in place of the words "last clear chance," the quoted statement applies with precision in its entirety to the question here under consideration. It is true that the "last clear chance" rule is not, strictly speaking, a modification of the contributory negligence rule; but neither is the *res ipsa loquitur* rule, strictly speaking, a modification of the rule as to the burden of proof. Can it be fairly said that this instruction was likely to mislead the jurors if it had been given? It did not tell them that it was incumbent upon the plaintiff to prove the particular act or omission of this defendant which was relied upon by him, but merely that it was incumbent upon him to prove "that such accident was caused by some act or omission of neglect." In other words, it told the jurors that in order to return a verdict against this defendant they must find from a preponderance of the evidence (which was elsewhere correctly defined in the instructions) that this defendant had been guilty of some negligent act or omission. In *Kahn* v. *Triest-Rosenberg Cap Co., supra,* the defendant appealed from a judgment against him for damages for injuries to plaintiff's goods caused by water escaping from a boiler maintained by defendant upon an upper floor in the same building. The court instructed the jury that the mere fact of the overflow of the water from the boiler under the cir-

cumstances of the case was *prima facie* evidence of negligence. It also instructed them that, "Unless they, the plaintiffs, have shown that the boiler and apparatus which was used by the defendant were improper appliances to be used, or that they were maintained or used by it in a careless or negligent manner, and unless they have so shown to your satisfaction and by a preponderance of the evidence, you are instructed that you must find for the defendant." This presents a situation which would have been substantially identical in principle with the situation in the instant case if the trial court had given the instruction which it here refused. It was urged in that case that the two instructions were conflicting, which is the essence of the claim here made in behalf of the respondent. This court said: "There was no conflict in the instructions given by the court. . . . It still remained the law that upon the whole evidence the plaintiff must have the preponderance in order to succeed." [7] Each of the following cases also holds, either expressly or by necessary implication that, where the court gives an instruction embodying the doctrine of *res ipsa loquitur,* it should also give one to the effect that the burden of proving his case by a preponderance of the evidence rests upon the plaintiff. (*Cody* v. *Market St. Ry. Co., supra; Valente* v. *Sierra Ry. Co.,* 151 Cal. 534, 537 [91 Pac. 481]; *Patterson* v. *San Francisco etc. Ry. Co., supra; Bonneau* v. *North Shore R. R. Co., supra; Wyatt* v. *Pacific Elec. Ry. Co.,* 156 Cal. 170, 175 [103 Pac. 892]; *Diller* v. *Northern California Ry. Co.,* 162 Cal. 531, 537 [Ann. Cas. 1913D, 908, 123 Pac. 359]; *Slaughter* v. *Goldberg, Bowen & Co.,* 26 Cal. App. 318, 328 [147 Pac. 90]; *Weaver* v. *Carter,* 28 Cal. App. 241, 247 [152 Pac. 323].)

As to the question of miscarriage of justice. An examination of the instructions given by the trial court makes it apparent that the error in refusing the requested instruction was of much greater consequence than has thus far been made to appear. The jurors were told no less than four different times that before they could return a verdict against the defendant Urgo they must find that the plaintiff has proved his case by a preponderance of evidence. But nowhere in the instructions is there a hint or suggestion that he was required to produce such a preponderance as against the defendant Transit Company.

They were told that, "If from the evidence you believe the accident was such as in the ordinary course of things does not happen had the driver of the motor or passenger bus then used proper care in its management or operation, that affords *prima facie* evidence, in the absence of explanation, that the accident arose from a want of care on the part of the Motor Bus Company." And, again, "If you find that while the plaintiff was being carried as a passenger by the defendant, the Motor Transit Company, the bus upon which he was a passenger collided with a truck operated by the other defendant, M. Urgo, and that he was injured, then a presumption of negligence arises which throws the burden upon the defendant, the Motor Transit Company, the burden of showing that the injury was sustained without any negligence on its part, and in the absence of such evidence your verdict should be in favor of the plaintiff . . ." (Although counsel have not complained on this ground it may be noted that the instruction last quoted was open to the objection that it suggested to the jurors that there was an absence of evidence showing that the injury was sustained without any negligence on the part of the Transit Company, whereas there was in fact a great deal of such evidence in the case.) The jurors were told no less than four different times, in effect, that the defendant, Transit Company, owed to the plaintiff the duty to use the utmost care and diligence of a very cautious person, and that it was bound to carry him safely, as far as human care and human foresight would go. And in immediate juxtaposition thereto they were told that, "On the other hand, the defendant Urgo was only required to use ordinary care in driving the automobile." It is not intended to suggest that these instructions were erroneous or in any way incorrect. But the emphasis which was given to the rules of law embodied in them by their repetition was such as to make the omission of this defendant's requested instruction all the more significant. It should be kept in mind also that at the very outset of the instructions the court said to the jury that, "during the instructions *you will be told* that certain facts must be proved by a preponderance of evidence. That means such evidence as, *when weighed with that opposed to it, has more convincing force,* and from which it results that the

greater probability is in favor of the party [plaintiff in this case] upon whom the burden rests.'' (Italics ours.) The jury, naturally, would have understood from this assurance that the burden of proof and its application would be fully covered as to each of the defendants, and if nothing was said by the court as to the burden of proof being with respondent in making his case against appellant as well as against Urgo, his codefendant, it was for the reason that the burden did not rest upon respondent so far as the appellant was concerned. This was a limitation of appellant's right of defense not warranted by law. Moreover, the rules of the road were stated in the instructions more favorably to the defendant, Urgo, than is warranted by the law. To be sure, the defendant Transit Company is not entitled in law to complain of the fact that its codefendant unjustly escaped liability, if such be the fact, but it is, we think, entitled to complain of an incorrect *instruction as to the rules of the road applicable to its* codefendant because of the circumstance that in determining whether or not the bus driver was negligent it should have been determined in the light of the fact that he was entitled to assume that the truck driver would obey the rules of the road, and was entitled to act in reliance upon that assumption until something should occur to give him notice to the contrary.

The question whether or not there has been a miscarriage of justice is to be considered not solely with respect to its relationship to the plaintiff, but also with respect to the rights of the appealing defendant. It is conceded that under the circumstances disclosed by the evidence herein one or both of the defendants must have been negligent, but it does not follow therefrom that unless the jurors found against the truck driver they were obliged to find against the carrier. Plaintiff is not entitled to recover against appellant because of the weakness of his case against his codefendant, Urgo, or *vice versa.* If he recovers at all it must be upon the strength of the case he is able to make out against either. To entitle him to succeed against appellant he is held to the law's requirement that the burden of proving his case rests upon him. But it cannot be justly said that the jurors herein found that defendant, Urgo, was not negligent. The most that

can be said in this behalf is that the jurors found that
the plaintiff had failed to prove negligence of this de-
fendant by a preponderance of the evidence. The burden
was at all times upon the plaintiff to prove his case by
such preponderance, and if he failed to do so it was
the duty of the jurors to return a verdict for the defend-
ant. If the jurors found that the evidence was evenly bal-
anced as to the negligence of the defendant, Urgo, it was
their duty to return a verdict in his favor, and if at the
same time they found that the evidence was evenly balanced
as to the negligence of defendant, Transit Company, it was
their duty to return a verdict in its favor.

Respondent insists that the refusal to give the requested
instruction was cured by the giving of another in which
it was stated that although it was true that appellant,
as a carrier of passengers for reward, owed to the plain-
tiff a greater degree of care than ordinarily obtains between
persons having no such contractual relationship as be-
tween themselves or as between one of them and the public,
and if the jury found from the evidence that the plaintiff's
injuries were proximately caused solely by the negligence of
some other person, or if at the time of the collision ap-
pellant was operating its bus in a lawful manner, the jury
would not be justified in finding a verdict against it. The
instruction offered as a substitute did not cure the omission
complained of. In substance, it does no more than to tell
the jury what it doubtless knew that if appellant was
without fault no verdict could be rendered against it.
(*Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663].)
It falls far short of instructing the jury on the matter of
law requested.

A thorough investigation of the record has convinced
us that a preponderance of the evidence was not on the
side of the plaintiff as against the defendant, Transit Com-
pany. Neither this court nor the law is responsible for
the situation that confronts the parties to the action by
reason of the conclusion reached by us. Plaintiff and re-
spondent could and should have protected himself from
any ground of complaint he may feel that he now has by
reason of the elimination of any party to the action by
taking an appeal from the judgment in Urgo's favor.
Upon the face of the record he should have done so. It was

no part of appellant's duty to protect his rights and, of course, he could not expect he would. By the record which respondent helped to make in the court below the precise result here announced should have been reasonably anticipated. It is true that plaintiff was injured by the negligence of one of the defendants. But this unfortunate circumstance did not give him a cause of action against an innocent person. The axiom that one must not be permitted to take from another that which he is not entitled to receive is sound, both in law and morals.

[8] Upon a full consideration of all the testimony, as well as the physical facts described by the witnesses, and upon an examination of the entire record, we are of the opinion that appellant was deprived of a substantial right which in effect amounted to a miscarriage of justice by the denial of the right under the significant circumstances of the case, to have the jury instructed that it was incumbent upon plaintiff to prove his case by a preponderance of the evidence against appellant as well as against defendant Urgo.

The judgment is reversed.

Lawlor, J., Lennon, J., Myers, J., and Waste, J., concurred.