[Civ. No. 4581. Third Appellate District.—August 2, 1933.]

MARY H. WENDLER, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

Nelson & Ricks for Appellant.

A. G. Bradford for Respondent.

BURROUGHS, J., *pro tem.*—This is an action for personal injuries sustained by the plaintiff while riding as a passenger on an autostage owned and operated by the defendant who was a common carrier. The cause was tried by the court without a jury. Findings of fact were entered in favor of the plaintiff and she was awarded a judgment in the sum of $4,362.45. From the judgment the defendant has appealed to this court.

Plaintiff's cause of action is based upon the doctrine of *res ipsa loquitur.*. The answer alleges as a special defense: "That the tire-rim on one of the wheels of defendant's said automobile, which caused the tire to blow out on said automobile stage of defendant became broken and disconnected and was defective, thereby rendering further control of said automobile stage by the operator thereof impossible; that defendant used all reasonable precaution and diligence and the highest degree of care by way of inspecting the said automobile stage, and especially the wheels and tire-rims and tires on said automobile stage immediately prior to the accident referred to in plaintiff's said complaint, but that said defect, or defects, were latent and not susceptible to discovery and that said accident was wholly unavoidable on the part of this defendant."

The evidence discloses that the plaintiff was riding as a passenger in the defendant's autostage from Eureka to Trinidad in Humboldt County, California. At a point near McKinleyville, the stage suddenly plunged from the highway into a ditch, where it turned partly over against an embankment. The plaintiff was thrown violently from her seat in the stage to the floor. Her knee and back were injured. she was taken from the autostage through a window and hurried to a hospital in Eureka, California, where examinations disclosed a very severe sprain of the right knee. The knee was very much swollen and extremely painful. She remained in the hospital twenty-three days and was removed from there to her daughter's home in Eureka, where she was under treatment for her injuries for a long period of time. The trial of the action was held nearly two years after the accident and the plaintiff was still under treatment, and suffered very severe pain and was unable to walk, except with the aid of a crutch or cane. She has also developed

what is called "climatic arthritis" and she will always be an invalid. Plaintiff established that she had paid her stage fare in advance and it was admitted that defendant was a common carrier of passengers for hire.

■ It is well settled that common carriers for hire are required to use the utmost precaution and diligence for the safety of their passengers. (Sec. 2100, Civ. Code; *Cline* v. *Santa Barbara etc. Ry. Co.*, 150 Cal. 741, 745 [90 Pac. 125]; *Drury* v. *Los Angeles Ry. Corp.*, 102 Cal. App. 58, 63 [282 Pac. 525]; *Jianou* v. *Pickwick Stages System*, 111 Cal. App. 754, 757 [296 Pac. 108].)

It is contended by the defendant that, irrespective of the doctrine of *res ipsa loquitur* and the inference deducible therefrom that the accident was caused by the negligence of the defendant, the latter having offered evidence to show how the accident happened, the effort made by it to keep its stages in good and safe operation, and to prove that the accident was not caused by any negligence on the part of the defendant or any of its employees, but was, in fact, due to the existence of a latent defect which the defendant knew nothing of and could not by the exercise of the utmost care and diligence have anticipated and, there being no rebuttal of such evidence offered by them, the evidence does not sustain the findings of negligence made by the court.

■ In support of this theory, defendant has offered many citations of authorities to show that irrespective of proof sustaining the doctrine of *res ipsa loquitur*, the plaintiff is not relieved of the burden of proof and defendant need only meet the plaintiff's case by evidence of equal weight. (*Scarborough* v. *Urgo*, 191 Cal. 341, 346 [216 Pac. 584]; *Scellars* v. *Universal Service Everywhere*, 68 Cal. App. 252 [228 Pac. 879]; *Valente* v. *Sierra Ry. Co.*, 151 Cal. 534 [91 Pac. 481].) While this is a correct statement of the law and sustained by the above authorities, we do not deem it applicable to the facts of this case. The weight to be given to the evidence and where the preponderance thereof lies are always questions of fact for the court or jury. ■ The only evidence offered by the defendant as to the inspection of the wheel admitted by the defendant to be the cause of the accident is that of one Shirley Callahan that it was his duty to "air up" the tires, inspect all the tires upon all the busses, make all changes of the tires off of the rims,

remount the tires on the rims that go on the wheels, check the alignment of the front wheels and keep a log of the tires that were running on the Pickwick Stages System; that he remembered the particular stage upon which the plaintiff was riding and examined the wheels thereon at about one-thirty in the afternoon of the day of the accident; that he found the tires to be all right. The tire that blew out had no cuts in it and it was not worn very badly and the rim seemed to be all right so far as he could observe with the eye. He saw no crack or split in the rim. It did not appear to be rusted or defective. There was nothing to indicate that it was not safe to leave on the stage for further operation. He had been working in that particular line of work for three years and on the day of the accident he checked all tires on the stage for air pressure. He had the front end of the car jacked up and checked the toe-in on that particular day. He looked the rims over to see that the lugs were on and the lock rings were on each of them. He looked over the front tires for cuts that might have been in them to cause a possible blow-out. He did not get underneath the car. He did not remove the tires from the rims. He further testified that it was not possible for him to observe the condition of a rim without removing the tire. All he could see from looking at it from the front was the condition of the edge of the tire rim. He knew of no other way of detecting any possible flaw or defect in the rims, without actually taking the tire casing off, other than the examination he had made. He covered the examination entirely by the eye. He did not sound out these rims with a hammer or anything like that to find their condition. It further appears that the defective rim was not produced at the trial.

*Jianou* v. *Pickwick Stages System,* 111 Cal. App. 754 [296 Pac. 108], was an action involving personal injuries to another passenger who was injured in the same accident. The following language taken from pages 758 and 759 of that opinion applies with equal force to the facts of the case at bar and we deem it decisive of this case:

"Having admitted that the accident was caused by a defective or broken rim of a wheel, the question as to whether the defendant exercised due care to discover and repair this defect and thus avoid the accident, was a problem for the

court to determine from the evidence adduced. By the rendering of the judgment against the defendant, its affirmative allegation that an adequate inspection of the wheel was made, must be assumed to have been found against the defendant. . . .

"It is fair to assume from the foregoing testimony that Shirley Callahan was employed to examine the rubber tires and see that they contained the proper amount of air. All that he did to inspect the metal rims was to observe the portion which was visible as he turned the wheels around. He does not even pretend to have critically examined the rims. He was busily engaged in looking at the rubber tires for incisions or worn places. Absolutely nothing of real value was done to detect any flaws or defects in the metal rims. A little hammering with a mallet might have detected a crack or defect in the rim from the vibration or sound. The court was warranted in holding this superficial examination of the rims was insufficient to constitute adequate inspection thereof. If it be true, as the defendant alleges that 'the tire-rim on one of the wheels . . . (was) broken and disconnected and defective' so as to cause the blowing out of the tire, it would seem that a casual inspection should have disclosed the defect. At least the evidence regarding the inspection of the wheels fails to furnish that degree of 'utmost care and diligence' required of a common carrier of passengers to insure their safety. The broken wheel was not even produced at the trial. Its production might have disclosed a crack in the rim which had existed for some time prior to the accident. We are of the opinion the evidence is ample to support the findings."

We think the foregoing also disposes of the point raised by the appellant that the defect in the rim was a latent defect.

No further question has been presented for our consideration. The judgment is affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.