[Civ. No. 16753. Second Dist., Div. One. Feb. 17, 1949.]

ROSE STARK, Respondent, v. YELLOW CAB COMPANY et al., Appellants.

Harry B. Ellison and James L. Ronnow for Appellants.

Jones & Wiener and George M. Wiener for Respondent.

WHITE, J.—At about 5:15 o'clock on the afternoon of September 10, 1946, plaintiff Rose Stark was a passenger in a taxicab of defendant Yellow Cab Company which was being driven in a westerly direction on Temple Street in the city of Los Angeles by defendant Ted Carlson. The weather was clear and traffic was light. At the intersection of Vendome Street the driver brought the cab to a stop before the east line of the west crosswalk on Temple Street, whereupon an automobile driven by defendant Henry C. Bunch, Jr. struck the rear of the cab, damaging both vehicles and causing the injuries of which plaintiff complains. Defendant Bunch filed no answer in the action and his default was duly entered. Upon trial of the cause, the jury returned a verdict against the cab company and the driver of the cab, awarding plaintiff damages in the sum of $13,250. From the judgment entered upon such verdict the present appeal is prosecuted.

As grounds for reversal appellants urge (1) that the evidence is insufficient to establish liability on their part; (2) that the damages awarded are excessive; (3) that the trial court erred in giving instructions on the doctrine of res ipsa loquitur; and (4) that the trial court erred in refusing to give certain instructions requested by defendants.

Appellants contend that the only conclusion to be drawn from the evidence is that the sole proximate cause of the accident was the negligence of defendant Bunch in following the cab at a distance of 30 feet at a speed of 25 to 30 miles per hour and failing to maintain such control over his vehicle as to enable him to stop in time to avoid a collision.

It may be conceded that there is substantial evidence of negligence on the part of defendant Bunch, but the record also contains evidence, which it must be assumed was accepted by the jury, sufficient to support a finding that the defendant cab driver did not exercise that high degree of care required of a carrier for reward. (Civ. Code, § 2100.) The evidence was conflicting on the question of whether the cab driver gave a proper hand signal as required by section 546(c) of the Vehicle Code.

The plaintiff testified: "I was looking out of the windows of the cab and I heard a screaming of wheels and the car stopped suddenly and I found myself being raised. . . . I had a feeling of rising, of myself, with the body of the car, and I heard the wheels screaming and it all rolled into one motion all at one time." Mr. and Mrs. Bunch also testified that the cab came to a very sudden stop. Mr. Bunch testified, "Well, the cab got just in the intersection of practically where it is setting now (referring to a diagram), maybe I will say five feet from where he is there, and he hit his brakes with all his might and the cab just shot upward on his springs and just stopped dead."

The driver of the cab testified that he was driving 25 to 30 miles per hour, but on seeing an old lady in the west crosswalk he began to slow down about a block from the crosswalk and entered the intersection at about 15 miles per hour, coming to a stop before the crosswalk; that the cab had been stopped for five or ten seconds when it was struck by the car of defendant Bunch. Mr. and Mrs. Bunch testified that the cab driver gave no hand signal, and stated to them after the accident that he did not have time to signal "because there was an old lady crossing the street." The cab driver admitted that he did not look in his rearview mirror during the time he was driving west on Temple street and did not know there was a car behind him. He further testified that if he had not been holding his brakes the impact would have thrown his cab against the old lady who was then directly in front of him. However, none of the other three witnesses to the accident, that is, Mr. and Mrs. Bunch and the plaintiff, saw the old lady crossing the street. Mrs. Bunch testified that there was an old lady standing on the southwest corner of the intersection after the accident and that she crossed to the northwest corner after the vehicles had been separated and the cab driver had departed. The cab driver's testimony that he slowed down before stopping

and that there was a substantial interval of five to ten seconds between the time he stopped and the time his cab was struck was contradicted by these three witnesses, the plaintiff and Mr. Bunch testifying that the body of the cab rose on ·its springs when it was stopped. Mr. and Mrs. Bunch testified that they had been following the cab at approximately 30 feet distance for several blocks and were at that distance when the driver stopped suddenly. The driver testified that he was in the center lane; Mr. and Mrs. Bunch testified that both cars were proceeding close to the right-hand curb. If the testimony of Mr. and Mrs. Bunch and the plaintiff is to be believed, then the testimony of the cab driver stands seriously impeached, and the jury would be warranted in viewing all of his testimony with distrust. (Code Civ. Proc., § 2061, subd. 3.)

It must be held, therefore, that the record discloses substantial evidence to warrant the jury in concluding that irrespective of the negligence of defendant Bunch, the act of the cab driver in making a sudden stop on the far side of the intersection and failing to give an appropriate hand signal as required by section 546(c) of the Vehicle Code was also a proximate cause of the accident. In such circumstances, under well settled rules, an appellate court may not disturb the verdict on the ground of insufficiency of the evidence.

Appellants urge that the trial court erred in instructing the jury on the doctrine of res ipsa loquitur because ''the instrumentality causing the injury was not in defendant's management or control; and under the proofs the injury may have been caused by any one of several acts of negligence, most of which were not attributable to defendants.'' It is argued that since the evidence showed that Bunch was negligent in failing to stop promptly or in driving too fast and too close to the cab in front of him, the rule of res ipsa loquitur is not applicable, because in order to apply the rule ''the nature of the accident must not only support the inference of defendant's negligence but must exclude all others.'' This contention cannot be sustained. ■ It is thoroughly established in this state that a passenger who is injured while riding in the vehicle of a carrier for hire is not deprived of the benefit of the doctrine of res ipsa loquitur merely because the accident involved another vehicle not under the control of the carrier. Many of the California cases in which the doctrine was applied to cases involving the collision of a carrier vehicle with another vehicle may be found in 83

American Law Reports, pages 1163, 1166, and 161 American Law Reports, pages 1113, 1114. Three cases in which the doctrine was applied to collisions between a cab and another vehicle are *Holt* v. *Yellow Cab Co.*, 124 Cal.App. 385, 389 [12 P.2d 472]; *Formosa* v. *Yellow Cab Co.*, 31 Cal.App.2d 77, 85 [87 P.2d 716]; *Dieterle* v. *Yellow Cab Co.*, 34 Cal. App.2d 97, 100 [93 P.2d 171]. In the last-cited case it was said: "Since the plaintiffs were being transported as passengers for a reward by respondents they could rely upon the obligation of the driver of the taxicab to use the utmost care and diligence for their safety. In presenting their case to the trial court they were entitled to the presumption embodied in the doctrine of *res ipsa loquitur.*" (See, also, *St. Clair* v. *McAlister*, 216 Cal. 95 [13 P.2d 924], and *Scarborough* v. *Urgo*, 191 Cal. 341 [216 P. 584].)

The case of *Gritsch* v. *Pickwick Stages*, 131 Cal.App. 774, 784 [22 P.2d 554], relied upon by appellants, can be readily distinguished (see opinion of Wood, J., in *Spinner* v. *Los Angeles Ry. Corp.*, 52 Cal.App.2d 679, 682 [126 P.2d 940]). In the Gritsch case it appeared from plaintiff's own evidence that the sole cause of the collision was the negligence of the driver of the other vehicle, who failed to make a boulevard stop and crashed into the side of defendant's stage.

Plaintiff in the present cause was in the same position as was the plaintiff in *Formosa* v. *Yellow Cab Co.*, *supra*, where the court said (p. 85): "The respondent herein was a passenger for hire in a taxicab owned and operated by this appellant. He had no forewarning or foreknowledge of this particular accident. He was seated in the taxicab in the place allotted for passengers and was paying no attention whatsoever to matters regarding traffic, relying entirely upon the driver of the taxicab. He was rendered unconscious by the accident and at the time of trial had no recollection whatsoever of any of the happenings immediately preceding or following the accident. Under these facts the doctrine of *res ipsa loquitur* applies."

The plaintiff here charged negligence in general terms. She had no personal knowledge of how the accident happened. The other witnesses to the accident, the cab driver and Mr. and Mrs. Bunch, were called by her as adverse witnesses under section 2055 of the Code of Civil Procedure. The trial court did not err in instructing the jury upon the doctrine of res ipsa loquitur. Under the circumstances of the accident here in question, it was for the jury to determine whether

the inference of negligence was overcome by the testimony of the cab driver and other witnesses.

It is further argued that "the trial court erred in giving plaintiff's instructions to the jury on res ipsa loquitur when the jury was not also instructed on the burden of proof." An examination of the instructions discloses that this point is without merit. In giving its instructions on res ipsa loquitur the court pointed out that while the rule "may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence," the rule was applicable only under special circumstances which the court then set forth. The court further advised the jury that it was "not necessary for a defendant to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned."

Error is predicated upon the alleged refusal of the trial court to give two instructions requested by defendants, one to the effect that the jury could not speculate as to the cause of the accident, but must find for defendant if the evidence did not preponderate in favor of plaintiff, and the other that the jury should consider all the evidence, regardless of which side produced it (Cal. Civ. Jury Instructions, Nos. 132 and 133). Whether such instructions were requested does not appear from the record, and moreover, in view of the entire charge, the failure to give them could not have been prejudicial.

It is urged that the award of $13,250 damages is excessive. It is true that the award is large, but viewing the evidence, as we must, in the light most favorable to the plaintiff, we cannot hold that the verdict is so disproportionate to the evidence as to suggest at first blush that it was the result of passion, prejudice or corruption on the part of the jury. "An allowance of damages is primarily a factual matter (*Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356]), and it is well settled that even though the award may seem large to a reviewing court, it will not interfere unless the allowance is so disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice." (*Wircher* v. *Atchison, T. & S. F. Ry Co.*, 32 Cal.2d 176, 187 [195 P.2d 427].)

Appellants' contentions that plaintiff's symptoms following the accident were largely subjective; that her "hysteria neurosis" was a condition from which patients always recover; that a large part of her medical and hospital expenses was attributable to treatment for a skin rash; and that her testimony was not sufficient to support any award based on loss of earnings, are based upon appellants' own version of the evidence and ignore other substantial evidence which, if believed by the jury, as we must assume it was, justified the verdict. Plaintiff introduced doctor and hospital bills amounting to $846.71. She testified to a physical decline following the accident, including headaches, nervousness, inability to properly digest food, shaking and halting speech mannerisms, nausea, loss of weight and menstrual difficulties. Two specialists testified that they could state with reasonable certainty that these symptoms were caused by the blow on her head. Plaintiff's personal physician testified that prior to the accident her general physical condition was "quite good." The contention that plaintiff's hospital expenses were primarily for a skin irritation is not borne out by the record. Dr. Levey testified that the skin irritation treatment "was incidental"; that she could have been treated for it at home as well as in the hospital; that she was in the hospital primarily for observation. Dr. Karz, plaintiff's personal physician, testified that at the time of trial he was still treating plaintiff for her condition following the accident and that it would be necessary to continue such treatment, and that he did not know how long in the future treatment would be needed. Two physicians testified that psychotherapy treatment might be advisable, and there was testimony that such treatment might extend over a year or two and cost from $1,000 to $1,500 per year.

Any doubt raised by the fact that many of plaintiff's complaints were subjective was a question for the jury. (*Buswell* v. *City & County of San Francisco*, 89 Cal.App.2d 123, 128 [200 P.2d 115].) In addition to plaintiff's description of her symptoms, including headaches which required her to go to bed and a feeling of "pulling" from the ears downward, tension, nervousness, nausea, blurred vision, fatigue, and loss of weight, the jury were also able to observe while she was on the witness stand the stuttering, facial grimaces and contortions attributed to the injury. There was competent medical testimony that she was suffering from a "post-traumatic neurosis," and that, as heretofore

noted, psychotherapy treatment might be necessary to effect a cure.

Plaintiff testified that before the accident she earned about $50 per week selling cosmetics, but that after she had recovered sufficiently to resume work on a part-time basis she was able to earn only $10 to $15 per week.

With reference to damages, therefore, the record discloses competent evidence of past medical expenses of $846.71, probable future expense of from $1,000 to $3,000, elements of pain and suffering, and substantial impairment of earning power. In such circumstances, this court cannot disturb the verdict. The question of excessive damages was presented to the trial judge upon a motion for new trial, which was denied. ". . . The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. (*Fisher* v. *Zimmerman,* 23 Cal.App.2d 696 [73 P.2d 1243]; *Sassano* v. *Roullard,* 27 Cal.App.2d 372 [81 P.2d 213].) When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors." (*Holmes* v. *Southern Cal. Edison Co.,* 78 Cal.App.2d 43, 51, 52 [177 P.2d 32].)

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.