[Civ. No. 15040. First Dist., Div. One. June 27, 1952.]

OLIVIA TAYLOR, Respondent, v. LUXOR CAB COMPANY (a Corporation) et al., Appellants.

Worthington, Park & Worthington, Leonard A. Worthington and Francis N. Foley for Appellants.

Rhein, Dienstag & Levin, Edward Levin and Paul A. Eisler for Respondent.

WOOD (Fred B.), J.—Plaintiff Olivia Taylor, a passenger in a taxicab owned by defendant Luxor Cab Company and driven by defendant Emanuel Schwarts, was injured when the cab was struck by a passenger car owned and driven by defendant Jack Newman Rabinowitz. The jury rendered its verdict in favor of plaintiff and against all three defendants. From the judgment entered thereon, the cab company and Schwartz (hereinafter called Luxor) appealed, as also did Rabinowitz, two separate appeals which have been consolidated.

No question has been raised concerning the extent of plaintiff's injuries or the amount of the damages awarded. The issues pertain to the sufficiency of the evidence to show liability on the part of Rabinowitz on the one hand and the cab company and Schwartz on the other, and the propriety of certain instructions given the jury.

*We will consider first the sufficiency of the evidence.* The cab was traveling northerly on Fourth Street, taking plaintiff to the Santa Fe bus station near Market Street, in San Francisco. Schwartz testified that he turned left on Fourth Street from Folsom and traveled up Fourth Street toward Market and the Santa Fe bus station. After crossing Mission there were two lanes of traffic on Fourth Street going toward Market. He was in the left lane, the lane nearest the center of the street, traveling at 12 or 14 miles per hour. When he approached Jessie Street, near the bus station, the traffic stopped and he stopped after signalling with his hand. He looked in his rearview mirror, saw this other car behind him coming up at a rate of speed which induced him to keep his brake a little firmer. The car behind swerved to the right and hit the right rear of the cab with the left front bumper driving the cab into the rear of the car ahead. The cab was stopped four to ten seconds before the collision. The cab driver had been maintaining about 10 or 15 feet between the cab and the car ahead.

Rabinowitz testified that he was driving on Fourth Street toward Market Street, between Mission and Market Streets, in the center lane. A car (not the cab here involved) was

about 15 feet ahead of him in that lane. The cab was to his right and partly in front of him with its rear bumper about even with his front wheels. The cab started to cut in front of him, he took his foot off the throttle and let the cab cut in. The cab driver did not signal with his hand. The cab was about 3 or 4 feet in front of him and traveled 6 or 10 feet when it suddenly stopped without the driver signalling. He struck the rear of the cab. Neither car moved after the impact, it was a dead bump.

Robert Farmer, who was driving toward Market on Fourth Street, testified that he was intending to turn into the center lane of traffic and saw the cab stopped about 35 feet ahead of him. He was going to move into that space when he looked to the rear and saw Rabinowitz' car coming. Rabinowitz continued forward after the cab had stopped with the other traffic and struck the cab in the rear. The cab was stopped four, five or six seconds before the collision. The cab did not stop suddenly.

Marcus E. Gracia, who knew Rabinowitz, was traveling about two cars behind Rabinowitz. He testified that the cab was in front of Rabinowitz and in the center lane though not in direct line with the traffic in that lane. He did not observe the cab change lanes nor see the cab turn left. He only saw the position of the cab when it came to a stop, when he heard the impact. After the collision he saw that the cab was 5 to 8 feet ahead of Rabinowitz' car and at a slight angle, i.e., it was not in a straight line with the streetcar tracks on the street.

Plaintiff testified that she was riding in the rear seat of the taxicab, having given directions to be taken to the Santa Fe bus station. She did not recall how heavy the traffic was on Fourth Street. She was not watching the traffic, was talking to a fellow passenger. She did not know whether the cab driver when making a left-hand turn onto Fourth Street stayed in the lane nearest the center of the street; she was not watching him. She did not know whether he came over to the right or not. She thought he was traveling in the lane nearest the curb. She guessed he stopped; she did not know; she was busy talking; she did not know if he came to a full stop or was slowing down; the only thing she knew, she was hit; she could not say that the stopping of the cab occurred before the impact she felt. She did not know if he changed his course from the curb to the center of the street; she was not interested in how the cab was traveling.

She thought it stopped immediately before the collision. The first thing she really knew, there was this crash, and that is when she first paid attention to where she was. She felt a crash in back of her. The next thing she knew she was across the front seat and back again and struck something in the back of the cab. She did not feel the impact from the front until she felt the one from the rear. She did not see the driver of the other automobile. After the impact it appeared that the cab struck another car in front; there was no lapse of time between the two impacts. There was nothing in the operation of the cab that she objected to; as far as she was concerned the cab driver drove satisfactorily.

Each appellant claims this evidence was not sufficient to support a finding that he was negligent, or, if negligent, that his negligence was the proximate cause of the injury. Each points to the other as the sole causative factor disclosed by the evidence. Each overlooks or minimizes the significance of some of the evidence against him. ■ The evidence that the cab driver stopped suddenly without signalling and that Rabinowitz, then some distance behind the cab, crashed into the cab, would support inferences that neither driver was exercising the degree of care which it was his duty to exercise and that such lack of care of each was a contributing cause. The evidence supports the verdict.

■ *Rabinowitz assigns as prejudicial error the giving of the following instruction*: ''I direct you to find the Plaintiff's injuries were caused by the negligence of one or the other of the defendants, or by their joint negligence; you will therefore bring in a verdict for the Plaintiff against that defendant whose negligence resulted in the Plaintiff's injuries or, if you find that all of the defendants were negligent, regardless of the degree of the negligence of any of them, I instruct you to bring in a verdict against all of the defendants.''

Rabinowitz claims the omission of the element of proximate cause resulted in the court's advising the jury they must find against the defendants, or either of them, if negligent, whether such negligence was or was not the proximate cause of plaintiff's injury. That is not literally true. The words ''whose negligence *resulted*'' include the element of causation, especially when we recall that the instruction quoted did not stand alone. It followed proper and adequate instructions on plaintiff's burden of proving her case by a preponderance

of evidence, and the necessary elements of negligence and of proximate cause. Among the latter were these: "So in this case, before the plaintiff can recover here against both defendants or each one individually, as the case may be, it must first appear, and by a preponderance of the evidence, that the defendants were guilty, or each of them was guilty of some act of negligence which contributed proximately to the accident. If, under the instructions of the Court, you should find that the defendant was not guilty of negligence—and, of course, I am speaking now of either one or the other—which proximately contributed to the accident complained of, then of course you will have no occasion to consider the question of damages or the nature or the extent of the injuries. But it may be said now that there must be a verdict in favor of plaintiff against either one or both of the defendants," and "Now, the negligence must be the proximate cause of the injury or injuries, and what do we mean by proximate cause? Well, we say the proximate cause of an event must be understood to be that cause which, in the natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred. It is the efficient cause, the cause without which the injury would not have occurred. We sometimes define it as the efficient cause of the injury," and "When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently, and as proximate causes, to the injury of another, each of such persons is liable. This is true regardless of the relative degree of the contribution." In the light of these instructions which should be read with it, the questioned instruction was neither incomplete, nor inaccurate, nor misleading. (See *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 519-520 [203 P.2d 522]; *Amidon* v. *Hebert*, 93 Cal.App.2d 225, 227-228 [208 P.2d 733]; *O'Connor* v. *City & County of San Francisco*, 92 Cal.App.2d 626, 630-635 [207 P.2d 638]; *McChristian* v. *Popkin*, 75 Cal.App.2d 249, 257-260 [171 P.2d 85].) Rabinowitz has cited several decisions in support of his point but we do not find them applicable. In *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 P. 599], the questioned instruction, as to one of its elements, had no application to the facts of the case and, as to another, assumed an issuable fact to have been established as a matter of law. In *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066], the erroneous instruc-

tion was accompanied by instructions that incorrectly stated the law, was not aided by correct and adequate instructions. In *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169-170 [153 P.2d 338], there is a statement which, read out of its context, would seem to support Rabinowitz' position here. But that statement was made upon the affirmance of an order granting a new trial. It immediately followed statements to the effect that upon such an appeal all presumptions favor the order as against the verdict and that the order will be affirmed if sustainable upon any ground although the reviewing court might have ruled differently in the first instance. Those statements were accompanied by the observation that on the question of the possible prejudicial effect of a misdirection of the jury the trial judge "was in a position to determine far more accurately than an appellate court the effect of a particular instruction upon the jury and in view of the conflicting testimony concerning the happening of the accident, her conclusion that Finkelstein was prejudiced by the charge complained of rests upon sound grounds. Certainly there is no showing whatever of any abuse of discretion." (P. 171.) *Spear* v. *Leuenberger*, 44 Cal.App.2d 236 [112 P.2d 43], was not a case of a single incomplete instruction which could be and was aided by other instructions. There were incomplete instructions and there were instructions which incorrectly stated the law. Their total effect was prejudicial error: "It appears to us that when all of the instructions herein are considered together, the jury were not clearly, sufficiently, and correctly apprised of the law necessarily required to guide them in arriving at a proper verdict, when considered in the light of the sharply conflicting evidence in this case." (P. 252.)

■■ *Luxor claims it was prejudicial error to give these instructions,* which for convenience of reference we have numbered: (1) ". . . I should say that in this case plaintiff is entitled to a verdict and it is the question who are the parties defendant against whom such verdict should be." (2) "But it may be said now that there must be a verdict in favor of plaintiff against either one or both of the defendants." (3) "I direct you to find that the plaintiff's injuries were caused by the negligence of one or the other of the defendants, or by their joint negligence; you will therefore bring in a verdict for the plaintiff against that defendant whose negligence resulted in the Plaintiff's injuries or, if you find that all of the defendants were negli-

gent, regardless of the degree of the negligence of any of them, I instruct you to bring in a verdict against all of the defendants.'' (4) ''Where that which causes an injury is under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence, in the absence of explanation, that the accident is the result of the want of care.'' Luxor says that by the first three, the jury was given but two tasks (to determine the amount of the verdict and to decide against whom it should be entered) and that by the fourth of these instructions Luxor was put to the burden of showing it was not negligent. Luxor says it would have no quarrel with such an instruction if this were a case of a carrier in motion or which suddenly stopped. That it was not such a case, appellant says, appears from plaintiff's testimony and other witnesses. This argument leaves out the fact that plaintiff was quite uncertain as to what happened (she was talking with a fellow passenger, not paying any attention to traffic), ignores Rabinowitz' testimony that the cab suddenly stopped without signalling and overlooks the principle of law that a passenger injured while riding in a carrier for hire is not deprived of the benefit of the doctrine of res ipsa loquitur merely because the accident involved another vehicle not under the control of the carrier. (See *Stark* v. *Yellow Cab Co.*, 90 Cal.App.2d 217, 218-221 [202 P.2d 802], and authorities cited.)

*The use of the word ''presumption'' without defining it, in the following instructions, Luxor assigns as error*: (5) ''You are instructed that when it is shown that injury to the passenger was caused by the act of the carrier, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on the carrier's part,'' and (6) ''You are instructed that one of the cases where the mere fact of the accident raises a presumption that defendant was negligent is that of injuries to passengers on vehicles of common carriers, because of the special care that the common carrier owes to its passengers.'' A similar contention was made in *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533]. In overruling that contention the court said: ''While it appears to be well settled that under the rule of *res ipsa loquitur* an inference and not a presumption arises on proof by plaintiff of the necessary facts [cita-

tions], these terms are often erroneously used interchangeably, and as conveying the same meaning. We find that many lawyers and courts as well make this same mistake. We question whether the ordinary layman, to say nothing of many members of our profession, clearly comprehends the difference in the meaning of these two expressions. While courts have frequently called attention to the erroneous use of the terms, 'presume' and 'presumption' in stating the rule of *res ipsa loquitur*, no decision has been called to our attention in which a judgment has been reversed by reason of the erroneous use of these words. While it may be error, the error, in our opinion, has not prejudiced the defendants in any of their rights.'' (P. 734.) In our case, although ''inference'' instead of ''presumption''. should have been used, and, ''presumption'' having been used the court should have defined it, we do not believe the jury was misled, in view of other instructions given. For example, instructions (5) and (6) were preceded by instructions that the duty of the cab driver toward plaintiff did not make him responsible for the negligence, if any, of the driver of some other vehicle and that the duty to use the utmost care and diligence for the safe carriage of plaintiff as a passenger did not make Luxor an insurer or guarantor of such safety nor did it require the most effective methods of safety the human mind could imagine nor the best that scientific skill might suggest; it called for the exercise of a reasonable degree of skill, the highest care that reasonably could have been exercised consistently with the mode of transportation of its business as a carrier, measured in the light of the best precautions that were in common practical use in the same business and proved to be efficacious at the time of this accident. By other instructions the court advised the jury that plaintiff had the burden of proving the affirmative allegations of the complainant and that the negligence, if any, of either defendant could only be determined by consideration of all the facts and evidence in the case. (In this connection, see *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556, 564-565 [90 P.2d 371].) We conclude that instructions (5) and (6), viewed in their context, a portion of which we have indicated, did not mislead the jury.

■ ·*The use of the words ''res ipsa loquitur'' without defining them, Luxor assigns as error in an instruction* that ''The fact that a passenger was injured while riding in the vehicle of the carrier for hire does not deprive her of the benefit

of the doctrine *res ipsa loquitur* merely because the accident involved another vehicle not under the control of the carrier.'' While it is true the court did not in so many words define the expression ''res ipsa loquitur,'' it is also true that this instruction was one of a series on that subject. It immediately followed instructions (5) and (6) and was immediately followed by this explanatory statement: ''Where that which causes an injury is under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence, in the absence of explanation, that the accident is the result of the want of care.'' Here, again, the questioned instruction when read in its context convinces us the jury was not misled, the rights of the defendants were not prejudiced. In addition, we note that Luxor has not directed our attention to any instruction offered by it, on the subject of any of the questioned instructions, which might have obviated any of the asserted errors.

■ *Luxor complains of instructions given concerning its duty as a common carrier ''to use the utmost care and diligence for the safe carriage of the Plaintiff as a.passenger,''* not because they were improper, merely *because they were repetitious and thus overly emphatic.* We do not so read them. The first time the court used the quoted expression was in defining the degrees of care respectfully owed plaintiff by Luxor and by Rabinowitz. The next time it was for the purpose of defining the meaning of this expression and delimiting its scope,—explaining that Luxor was not an insurer or guarantor of plaintiff's safety, that it need not use the most effective methods of safety imaginable, that it was required to use a reasonable degree of skill, the highest care that reasonably could have been exercised consistently with the mode of transportation used and the practical operation of its business as a carrier. The third time, the court was telling the jury it was the duty of the cab driver to use ''the utmost care'' to avoid colliding with another car. The fourth time, the court was advising the jury that if they believed from the evidence that the taxicab driver failed to exercise this degree of care ''as . . . defined elsewhere in these instructions'' and that such failure contributed to proximately cause injury to the plaintiff, then even if they found the driver of the other car negligent, the taxicab company and its employees would also be liable. This was not mere repeti-

tion, nor emphasis by way of repetition; no more so than is the use of the term "ordinary care" several times in a set of instructions when that is the applicable standard of care. Such repetition as occurred here was reasonably necessary to a clear and understandable exposition of an applicable principle of law. Moreover, "Mere repetition of instructions alone, is not reversible error." (*Rose* v. *Tandowsky*, 80 Cal. App.2d 927, 932 [183 P.2d 347].)

*Finally, Luxor predicates reversible error upon the refusal of instructions it requested on unavoidable or inevitable accident.* Luxor says that "Under the factual evidence presented in this case . . . defendants were entitled to the benefit of these instructions," but does not direct our attention to any particular facts in evidence which might require the giving of such an instruction, and cites no authorities. The recent decision of the Supreme Court in *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823], indicates that the giving of such an instruction might not have been improper. That decision has been interpreted as meaning that "the giving of an instruction on unavoidable accident is proper unless the defendant is negligent as a matter of law." (*Driver* v. *Norman*, 106 Cal.App.2d 725, 727 [236 P.2d 6].) However, it does not follow that the failure to give such an instruction in our case was reversible error. The court in one of its instructions (No. (3), above) directed the jury "to find that the plaintiff's injuries were caused by the negligence of one or the other of the defendants, or by their joint negligence; you will therefore bring in a verdict for the plaintiff against that defendant whose negligence resulted in the Plaintiff's injuries or, if you find that all of the defendants were negligent, regardless of the degree of the negligence of any of them, I instruct you to bring in a verdict against all of the defendants." None of the appellants has taken exception to that instruction, save as to the asserted omission therefrom of certain of the elements of liability, features we have discussed and found not wanting. This indicates that the element of inevitability, as to each defendant respectively, turns upon lack of negligence upon his part or the failure of his negligence, if any, to operate as an effective cause of the injury. ■ The trial court fully advised the jury concerning negligence, proximate cause, plaintiff's burden of proof, and other pertinent factors, and gave two instructions to find in favor of Luxor Cab Company and Schwartz if the jury found that the accident in

question was caused solely and entirely by the negligence of the driver of the other car. Inasmuch as "the terms inevitable or unavoidable accident signify an injury which is caused by something other than the actionable negligence of the parties involved," and the " '. . . defense of inevitable accident is nothing more than a denial by defendant of negligence or a contention that his negligence, if any, was not the proximate cause of the injury.' " (*Parker* v. *Womack, supra,* 37 Cal.2d 116, 120 and 121), and the jury was fully advised on those subjects, we find no reversible error in the trial court's failure to give the proffered instructions on inevitable or unavoidable accident. Indeed, the requested instructions might well have confused the jury unless modified to fit in clearly with the instructions given.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.