[Civ. No. 24194. Fourth Dist., Div. One. July 9, 1982.]

ANTOINETTE IRWIN, Individually and as Administratrix, etc., et al., Plaintiffs and Respondents, v.
PACIFIC SOUTHWEST AIRLINES, Defendant and Appellant.

COUNSEL

Kern, Wooley & Maloney and Ralph S. LaMontagne, Jr., for Defendant and Appellant.

Harney & Moore, David M. Harney and Michael F. Dillingham for Plaintiffs and Respondents.

OPINION

**CAZARES, J.***—Pacific Southwest Airlines (PSA) appeals a summary judgment against it for liability and an award of damages arising from a midair collision between PSA flight 182 and a small plane, which occurred over the North Park area of San Diego.

The facts surrounding the collision of the aircraft are not in dispute. Flight 182 was on a visual approach to San Diego's Lindbergh Field on a clear day. Flight 182 was in a gradual descent and overtook the small plane, which was ascending. The Lindbergh control tower warned flight 182 of the proximity of the small plane and told it to maintain visual separation, but the pilot and crew, having acknowledged sighting the plane below, lost sight of the craft. The following crew colloquy took place just before impact:

"09:01:10 (First Officer): Are we clear of that Cessna?

"09:01:13 (Second Officer): Supposed to be.

"09:01:14 (Captain): I guess.

"09:01:15 (First Officer): Fifteen.

"[Unknown] (sound of laughter)

"09:01:20 (Off duty PSA Captain): I hope.

"09:01:21 (Captain): Oh yeah, before we turned downwind, I saw him about one o'clock, probably behind us now."

One hundred forty-four people died in the crash, including John A. Irwin who was a passenger on flight 182. An action for wrongful death was brought by Antoinette Irwin, individually, as the surviving widow of John A. Irwin and as administrator of the estate of John A. Irwin, and by John B. Irwin, James P. Irwin, Michael J. Irwin and Antoinette Irwin by and through their mother (plaintiffs).

The Irwin action became part of the Judicial Council Coordination Proceeding number 623. Plaintiffs joined a companion case (also part of

---

*Assigned by the Chairperson of the Judicial Council.

the judicial council proceeding) in a motion for summary judgment which was granted on the issue of liability under the doctrine of res ipsa loquitur.

This case was then transferred to the Sacramento superior court for trial on the issue of damages. The jury returned a verdict for plaintiffs—a lump sum of $1,215,000. PSA's motion for a new trial was denied. PSA appeals, claiming the San Diego court erred in granting plaintiffs' motion for summary judgment based on res ipsa loquitur because (1) plaintiffs failed to show PSA had exclusive control of flight 182; (2) there were triable issues of fact as to whether the inference of negligence under the doctrine of res ipsa loquitur had been overcome; and (3) res ipsa loquitur is inapplicable where plaintiff fails to bring other known culpable parties before the court. PSA also alleges the Sacramento court erred by (1) failing to instruct the jury that wrongful death awards are not taxable and (2) submitting BAJI No. 15.00 to the jury.

■ Plaintiffs contend PSA admitted liability at the damages phase of the trial,[1] and should, therefore, be precluded from appealing issues pertaining to the liability phase of the trial. They cite *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602 [39 Cal.Rptr. 721, 394 P.2d 561], which held a defendant bound to its counsel's unequivocal concession of liability in spite of earlier formal denials of such liability. However, in *Horn*, liability was an issue before the court at the time the concession was made. Here, liability had been established in a separate trial. The admission was extraneous because it was not of a fact "bearing on the issues involved" in the proceeding (*Oscanyan* v. *Winchester R. Arms Co.* (1881) 103 U.S. 261 [26 L.Ed. 539], cited with approval in *Duffy* v. *Griffith Co.* (1962) 206 Cal.App.2d 780, 789 [24 Cal.Rptr. 161]). Moreover, an admission is not binding if it is made improvidently or unguardedly, or if it is in any way ambiguous (see *Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 562 [165 P.2d 260]). In context, the admission here lacks the gravity of a complete relinquishment of rights on the issue of liability, particularly in light of the inappropriateness of a denial of liability at a trial for damages and PSA counsel's refusal to abandon the appeal. PSA is thus entitled to appeal the summary judgment granted in the liability trial.

---

[1]Her contention is based on PSA's opening statement and colloquy:
"Mr. DeMers (counsel for PSA): Judge Tuttle, ladies and gentlemen of the jury, as you can well imagine, defending a case such as this makes a lawyer earn his keep. [¶] That family you see in this courtroom, Antoinette Irwin, and I say 'hello' to them and the children, is a lovely family. [¶] Cast anything from your mind that I will ever at-

 PSA argues the San Diego trial court erred in granting plaintiffs a summary judgment on a theory of res ipsa loquitur. In order for res ipsa loquitur to apply, three conditions must be met: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]). PSA claims plaintiffs have failed to show PSA had exclusive control over flight 182 as a matter of law, alleging concurrent control of flight 182 between it (PSA) and the F.A.A. (represented by the air traffic controllers).

 As a common carrier, PSA has bound itself to carry safely those it takes into its aircraft. It is responsible for any, even the slightest, negligence and is required to do all that human care, vigilance and foresight reasonably can do under given circumstances (*Acosta* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72]). This higher standard of care is reflected in a relaxation of the elements of proof for an inference based on res ipsa loquitur against a common carrier. An inference of negli-

---

tack them in any way. I'm not going to do it. I wouldn't do it. They are and were a very nice, warm, healthy, all-American family, and an accident occurred which was—their father, her husband, their breadwinner was taken from them, but life doesn't stop there. It goes on and obviously, *because of the liability* in this case, *which we have admitted* [italics added] we could not settle this case.

"Mr. Thielen (counsel for Irwin): Excuse me your Honor. I have to object to that as a misstatement of the facts of the case, and I would like to approach the bench on the second part.

"The Court: We are now meeting in chambers at the request of the plaintiff.

"Mr. Thielen: I apologize for interrupting Mr. DeMers' argument.

"Mr. DeMers: Don't apologize, that's fine.

"Mr. Thielen: The defense has not admitted liability, and it's a very different situation where they stand up and fess up to their liability. This case plaintiffs brought on for a motion of summary judgment which was opposed vehemently and plaintiffs were successful. If the defense would like to admit liability, we'll accept that admission at this time.

"The Court: Maybe I missed what we're talking about. Did you state the defendant has admitted liability?

"Mr. DeMers: I'll admit liability in this case.

"Mr. Thielen: Yes?

"Mr. Harney (co-counsel for Irwin): Then, you abandon the appeal?

"Mr. DeMers: I don't abandon the appeal.

"Mr. Thielen: They have admitted liability, that's fine.

"Mr. DeMers: Do I have the authority to admit liability?

Mr. Harney: You did in front of the jury.

"Mr. DeMers: I'll admit liability. I have no quarrel with admitting liability."

gence based on res ipsa loquitur arises in cases where a passenger on a common carrier is injured as the result of the operation of the vehicle (*Hardin* v. *San Jose City Lines, Inc.* (1953) 41 Cal.2d 432, 436 [260 P.2d 63]).

Here PSA has admitted it is a common carrier. Flight 182 was on a regularly scheduled trip from Sacramento to San Diego with an intermediate stop at Los Angeles. John A. Irwin was a paying passenger who died of injuries sustained in the crash. ■ Flight 182 overtook and collided with the Cessna. Federal Air Regulations give an aircraft being overtaken the right-of-way and require a pilot of an overtaking aircraft to alter its course and pass well clear of any plane it overtakes (14 C.F.R. § 91.67(e) (1982)). The legal obligation of the PSA crew was to see and avoid the Cessna. We adopt the view that responsibility for the separation of two aircraft flying in visual flight rule weather, regardless of the type flight plan or air traffic clearance, rests directly upon the operating personnel of the respective aircraft (*United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379, 389). Thus, flight 182's reliance upon the assistance of the air traffic controllers does not relieve PSA of liability. As a common carrier PSA is also not relieved of liability because the accident involved another vehicle not under its control (*Stark* v. *Yellow Cab Co.* (1949) 90 Cal.App.2d 217, 220-221 [202 P.2d 802]).

■ When the facts giving rise to the doctrine of res ipsa loquitur are undisputed, as here, the inference of negligence arises as a matter of law (*Gerhardt* v. *Fresno Medical Group* (1963) 217 Cal.App.2d 353, 361 [31 Cal.Rptr. 633]). To rebut the inference of negligence, PSA as a common carrier had to satisfy the court it exercised the utmost care and diligence for Mr. Irwin's safe passage. Such a showing could be made by introducing sufficient evidence to sustain a finding either (1) the accident resulted from a cause entirely independent of any negligence on PSA's part, or (2) PSA exercised due care in all respects wherein it might have been negligent (*Newing* v. *Cheatham* (1975) 15 Cal.3d 351, 364-365 [124 Cal.Rptr. 193, 540 P.2d 33]). The evidence here shows neither a definite cause unconnected with PSA's lack of care, nor such care in all possible respects as leads to the conclusion the accident must have been due to some unknown but unpreventable cause. Plaintiffs were entitled to a summary judgment because the undisputed evidence supported the inference of negligence under the doctrine of res ipsa loquitur.

■ PSA is estopped from claiming error because the owner of the Cessna and the federal government were not subjected to the motion for summary judgment. PSA failed to raise the issue before the trial court and may not raise it for the first time on appeal (rule 13, Cal. Rules of Court).

■ PSA claims the Sacramento court erred in failing to instruct the jury that plaintiffs' wrongful death recovery is not taxable. Its proffered instruction was based on a number of out-of-state cases and the United States Supreme Court case, *Norfolk & Western Ry. Co.* v. *Liepelt* (1980) 444 U.S. 490 [62 L.Ed.2d 689, 100 S.Ct. 755]. However, the California courts have consistently held it is not error to refuse to give such an instruction (*Mackey* v. *Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 789 [161 Cal.Rptr. 64]; *Henninger* v. *Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 879 [59 Cal.Rptr. 76]; *Atherley* v. *MacDonald, Young & Nelson* (1956) 142 Cal.App.2d 575, 589 [298 P.2d 700]).

In *Norfolk & Western Ry. Co.* v. *Liepelt, supra,* 444 U.S. 490, the wrongful death action arose under the Federal Employers' Liability Act. The holding was based on federal statutory interpretation, not constitutionality. Thus the decision is not binding on this court. Moreover, the *Liepelt* decision involved an F.E.L.A. action which crucially distinguishes it from a case involving an action under state law (see *Vasina* v. *Grumman Corp.* (2d Cir. 1981) 644 F.2d 112, 118; see also *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 667 [151 Cal.Rptr. 399] [distinguishing federal cases dealing with liability under the Federal Tort Claims Act which allowed the "no income tax" instruction]). The trial court did not err in refusing the instruction.

PSA contends plaintiffs waived any right to keep the issue of nontaxability of the award away from the jury. During cross-examination of PSA's expert economist, plaintiffs' counsel asked the witness several questions regarding the "consumption figure" the witness used in calculating the economic loss sustained due to the decedent's death. The witness testified the consumption figure is the percentage of the decedent's income which the decedent could have reasonably been expected to spend on his own personal consumption. During the cross-examination, the following exchange occurred: "Q. Now, with regard to consumption, what does that refer to?

"A. What is being consumed. Well, if you are talking about the problem of consumption?

"Q. No. First of all, if you have a house payment, is part of that going to be refunded upon the death of the breadwinner?

"A. No.

"Q. If you have to pay taxes, is the government going to give you some rebate because the head of the household died?

"A. No."

During redirect of the witness, PSA's counsel, outside the presence of the jury, asked that he be allowed to bring to the jury's attention the award would not be taxable. The request was in light of the references to taxes by plaintiffs' attorney. The court felt the possibility of prejudice and confusion from an exploration of the tax question would far exceed the probative value of such evidence, particularly because the reference appears to be to property rather than income taxes. The court offered to give a corrective admonition or instruction to the jury explaining taxes were not at issue. PSA refused to have the jury so instructed. PSA has not shown any prejudice, nor has it shown any reason why the admonition or instruction would not have rectified any prejudice which may have resulted. The contention is thus meritless.

■ PSA argues the court erred in submitting BAJI No. 15.00 to the jury.[2] The airline claims the error may have allowed the Irwin family members to recover for more companionship and financial support than the decedent would have been able to physically or financially give. However, the evidence as to damages was presented to the jury in terms of the value of what the decedent would have produced, had he lived, as opposed to the loss incurred by each family member. Thus, the giving of BAJI No. 15.00 was not prejudicial to PSA.

The judgment is affirmed.

Work, J., concurred.

[2]BAJI No. 15.00 says: "Although there are several plaintiffs in this suit, the case of each is separate from and independent of the other. [¶] The instructions govern the case as to each plaintiff so far as they are applicable to him, unless otherwise stated. You will determine each plaintiff's case separately, the same as if you were trying different lawsuits."

**STANIFORTH, Acting P. J.**—I concur in the sound reasoning and result reached by my brethren but would reason to the same conclusion by a different route. In my opinion it is not necessary to reach the res ipsa loquitur issue, because PSA is precluded from appealing the issue of liability in this case. Counsel for PSA made an admission of liability in open court before the jury after it had affirmed that position in chambers to the court. PSA cannot renounce those significant acts here.[1]

The majority would distinguish *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602 [39 Cal.Rptr. 721, 394 P.2d 561]; I can find little difference between the statement made by counsel in this case and the statement made by counsel in *Horn*: "I am going to ask you to pay him some money. I will, however, contend now and throughout the case and in my final argument, legally we don't owe the plaintiff a dime. Nevertheless, we want you to give him some money." The Supreme Court found "Defense counsel's unequivocal invitations to a plaintiff's verdict can only be construed, in legal significance, as a concession of liability . . . in spite of earlier formal denials of such liability." (*Horn* at p. 605.) In *Bank of America* v. *Lamb Finance Co.* (1956) 145 Cal.App.2d 702, 708 [303 P.2d 86], the Court of Appeal said "In the absence of fraud, the admissions of an attorney in open court are binding upon the client. [Citations.]"

The majority states "the admission here lacks the gravity of a complete relinquishment of rights on the issue of liability, particularly in light of the inappropriateness of a denial of liability at a trial for damages and PSA counsel's refusal to abandon the appeal." (*Ante*, p. 414.) Considering the pending appeal on the summary judgment motion, any comment on liability was surplusage in the damages trial.

PSA seeks the best of all worlds. By an open court admission of liability, PSA put its most sympathetic face before the jury. At the appellate level, it would deny the admission and seek to avoid liability entirely. It is a fair inference these admissions were made as calculated trial tactics designed to keep the damage award as low as possible. The doctrine of estoppel precludes PSA from asserting this contention on

---

[1] The trial court stated "On the record we have had an admission of liability which is a statement to the jury, defense admits liability?" Counsel for PSA returned to the courtroom and stated in front of the jury "at the end, *you will have to make an award to this lady. There is no dispute as to that*, and the award will be fair and reasonable to Mrs. Irwin and her family, and fair and reasonable to my client." (Italics added.)

appeal. As a general rule a party relying on a specific ground of defense in the trial court will not be permitted to assume an inconsistent position in the appellate court (28 Am.Jur.2d, Estoppel & Waiver, § 72, p. 703, & cases cited), and a criminal defendant may not mislead the court and the jury by taking one position at trial and another position on appeal. (*People* v. *Pijal* (1973) 33 Cal.App.3d 682, 697 [109 Cal.Rptr. 230]; *People* v. *Peters* (1950) 96 Cal.App.2d 671, 677 [216 P.2d 145].) To adopt a different rule in this a civil case confuses and unsettles the law, unfairly disadvantages the plaintiffs. It encourages a capricious self-advantageous change in position. The damage award judgment was determined, presumably based on counsel's admission, proof and argument. PSA should not be allowed to reap the benefits from this judgment and yet attack it on appeal. (*Turner* v. *Markham* (1907) 152 Cal. 246, 247 [92 P. 485]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 136, p. 4131.)

A petition for a rehearing was denied July 27, 1982, and appellant's petition for a hearing by the Supreme Court was denied September 30, 1982. Kaus, J., did not participate therein.